**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

| | |
|---|---|
| MONICA ACERRA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> TRULIEVE CANNABIS CORP., et al., <br><br> Defendants. | CONSOLIDATED <br> CASE NO. 4:20cv186-RH-MJF |

**DEFENDANTS' REPLY BRIEF
IN SUPPORT OF MOTION TO DISMISS THE
CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

**KING & SPALDING LLP**

Paul R. Bessette *(admitted pro hac vice)*
  Texas Bar No. 02263050
Michael J. Biles *(admitted pro hac vice)*
  Texas Bar No. 24008578
Tyler W. Highful (*admitted pro hac vice*)
  Texas Bar No. 24083176
Srimath S. Subasinghe *(admitted pro hac vice)*
  Texas Bar No. 24093226
Jessica England *(admitted pro hac vice)*
  Texas Bar No. 24105841
500 W. 2nd Street, Suite 1800
Austin, Texas 78701
pbessette@kslaw.com
mbiles@kslaw.com
thighful@kslaw.com
ssubasinghe@kslaw.com
jengland@kslaw.com

**STEARNS WEAVER MILLER
WEISSLER ALHADEFF &
SITTERSON, P.A.**

Glenn Burhans, Jr.
  Florida Bar No. 60587
Highpoint Center
106 East College Avenue, Suite 700
Tallahassee, FL  32301
Tel: 850.329.4850
gburhans@stearnsweaver.com

Grace L. Mead
  Florida Bar No. 49896
Museum Tower
150 West Flagler Street, Suite 2200
Miami, FL  33130
Tel:  305.789.3200
gmead@stearnsweaver.com

*Counsel for Defendants Trulieve Cannabis Corp.,
Kim Rivers, and Mohan Srinivasan*

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

ARGUMENT ........................................................................................................4

I.     Plaintiffs fail to allege any materially false or misleading statement. ............4

       A.     Production Facilities...............................................................4

       B.     Mold Contamination ...............................................................7

       C.     Related-Party Transactions .....................................................8

II.    Plaintiffs have not raised a strong inference of scienter...............................10

III.   Plaintiffs' claims fail the *Morrison* test.......................................................13

CONCLUSION...................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re China Valves Tech. Sec. Litig.*,
No. 11-CIV-0796, 2012 WL 4039852 (S.D.N.Y. Sept. 12, 2012)......................9

*ECA, Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*,
553 F.3d 187 (2d Cir. 2009) ...............................................................9, 10

*Ernst & Ernst v. Hochfelder*,
425 U.S. 185 (1976).........................................................................11

*Matrixx Initiatives, Inc. v. Siracusano*,
563 U.S. 27 (2011)..........................................................................7, 8

*Mizzaro v. Home Depot, Inc.*,
544 F.3d 1230 (11th Cir. 2008) ...........................................................10

*Morrison v. Nat'l Australia Bank Ltd.*,
561 U.S. 247 (2010).........................................................................4, 13

*Oran v. Stafford*,
226 F.3d 275 (3d Cir. 2000) ................................................................7

*Quail Cruises Ship Mgmt. Ltd. v. Agencia de Viagens CVC Tur Limitada*,
645 F.3d 1307 (11th Cir. 2011) ...........................................................14

*Salters v. Beam Suntory, Inc.*,
No. 4:14-CV-659, 2015 WL 2124939 (N.D. Fla. May 1, 2015)......................4, 5

*Stoyas v. Toshiba Corp.*,
896 F.3d 933 (9th Cir. 2018) ...............................................................13, 14

*United States v. Isaacson*,
752 F.3d 1291 (11th Cir. 2014) ............................................................13, 14

*Wright v. Ernst & Young LLP*,
152 F.3d 169 (2d Cir. 1998) ...............................................................14

ii

*Zagami v. Nat. Health Trends Corp*,
   540 F. Supp. 2d 705 (N.D. Tex. 2008) ...........................................................9, 10

**Statutes**

18 U.S.C. § 371 ...............................................................................................14

Florida Statute, Section 195.073 .............................................................12

PSLRA ............................................................................................2, 11

Securities Exchange Act of 1934 .................................................................1, 2, 13

**Other Authorities**

Fed. R. Civ. P. 10(b) .........................................................................14

**INTRODUCTION**

Plaintiffs' Opposition does not cure the three deficiencies in their CAC that each independently requires dismissal under Rule 9(b) and the Reform Act: failure to plead falsity, materiality, and a strong inference of scienter.

*First*, Plaintiffs have failed to plead that it was false or misleading for Trulieve to describe its method of growing cannabis as a combination of indoor operations and "greenhouse style grows." CAC ¶ 50. Plaintiffs argue that Trulieve's facilities were "hoop houses," not "greenhouse style" facilities, but their very own definition of "hoop houses" describes them as "greenhouse-like" structures. CAC ¶ 15; Opp. at 7. Plaintiffs' pictures and descriptions of Trulieve's outdoor operations are also self-evidently "greenhouse style" facilities. *Id*.

Similarly, Plaintiffs have failed to plead that Trulieve wrongfully omitted to disclose any related party transaction. Plaintiffs contend that Trulieve received two loans from entities that should have been disclosed as related parties—Track V and Vandagraff One. They argue that Track V was a related party because a former Trulieve in-house counsel is listed as a director and registered agent. CAC ¶ 48. This does not come close to meeting the definition of a "related party" under IFRS accounting standards, which requires that the party exert substantial control or be a member of the entity's senior management team. Opp. at 24. And Plaintiffs' allegations concerning Vandagraff One are even thinner—they speculate that this

1

may be a related party because its address is the same as Track V.  CAC ¶ 48.  This comes nowhere close to meeting the particularity requirements of Rule 9(b) and the Reform Act.

Second, the alleged misrepresentations and omissions are immaterial as a matter of law.  Plaintiffs argue that Trulieve's description of "greenhouse style" production facilities was material, pointing to allegations that a lack of climate control caused three isolated and anecdotal examples of possible mold contamination of Trulieve's products.  CAC ¶¶ 38–40, 63.  They have not alleged that mold contamination impacted any significant number of products or had any financial consequences for Trulieve.  Courts have consistently held that the pleading of minor, anecdotal incidents fails as a matter of law to establish the materiality of a product quality issue.  The related-party allegations are also immaterial because the two alleged loans were just 1.8% of Trulieve's total assets (i.e., $442 million).  Moreover, Plaintiffs do not plead any facts suggesting that the terms of the loans were unfair or unfavorable to Trulieve.

Third, Plaintiffs have not alleged facts to raise any inference of scienter, much less the strong inference required by the Reform Act.  Plaintiffs offer no confidential witnesses, internal company documents, or insider stock sales to support an inference of intent to defraud.  Instead, they argue that Defendants' scienter should be inferred because some of the challenged statements concern Trulieve's growing

2

operations, which are "core operations."  Opp. at 31.  But this inference is neither cogent nor compelling.  While it may be reasonable to infer that executives have superior knowledge about their company's core operations, this does not support a blanket inference of fraudulent intent anytime, like here, that an alleged misstatement concerns a core product or operation but only an anecdotal impact on a few products.

Plaintiffs' sole allegation of motive and opportunity is the illogical claim that Rivers was motivated to lie about the nature of Trulieve's production facilities to "cover-up" the fact that Trulieve overpaid for these facilities when entering into a related-party transaction with One More Wish, a business tied to her husband.  Opp. at 32–33.  But the glaring fault in this theory is that Trulieve disclosed to investors the nature of the related party transaction and the purchase price.  Ex. 5, 2018 Consolidated Financial Statements at 19; Ex. 6, 3Q19 Consolidated Interim Financial Statements at 15.  This is the opposite of a cover-up, and completely negates any inference of fraud.  The only factual allegation cited to support Plaintiffs' theory that Trulieve overpaid in this related-party transaction are property-tax records, which were publicly available information throughout the purported Class Period and under Florida law do not reflect certain improvements to the property such as greenhouse style facilities.

3

*Finally*, Plaintiffs have failed to plead a domestic securities transaction under *Morrison.* Although Plaintiffs allege that they "purchased Trulieve securities during the Class Period," the CAC is devoid of specific facts that this Circuit and others have required to establish a domestic transaction.

For these reasons, Plaintiffs' claims should be dismissed for failure to state a claim.

## ARGUMENT

### I.    Plaintiffs fail to allege any materially false or misleading statement.

Plaintiffs challenge two sets of statements or omissions: (1) statements describing Trulieve's production facilities as "greenhouse style" operations, and (2) two disclosed loans that Plaintiffs contend should have been described as related-party transactions. Because Plaintiffs have failed to adequately allege any material misstatement or omission, Defendants motion to dismiss should be granted.

#### A.    Production Facilities

Plaintiffs argue that investors could have interpreted Defendants' statements that Trulieve used "greenhouse style" production facilities to mean the facilities were fully indoors and climate-controlled. Opp. at 20. But Plaintiffs must do more than simply allege a set of facts consistent with one interpretation that could establish falsity—instead, the facts must establish that their claim is plausible. *See Salters v. Beam Suntory, Inc.*, No. 4:14-CV-659, 2015 WL 2124939, at *1 (N.D. Fla. May 1, 2015).

Courts recognize that when falsity turns on the use of such an adjective, its plain meaning must apply.  For example, *Salters* (cited by Plaintiffs) considered whether Plaintiffs had plausibly alleged that the defendants had improperly described its product as "handmade."  *Id.* at *2.  Plaintiffs in *Salters* made the same argument as Plaintiffs do here, which is that there are interpretations of the term "handmade" that contradict the actual production process used by the defendants.  *Id*.  But the court soundly rejected this argument, relying on common-sense analysis of the plain meaning of the word "handmade."  *Id*.

Plaintiffs' claims turn on the definition of "greenhouse style," the precise term used by the Defendants to describe their production facilities.  CAC ¶ 50.  But Plaintiffs do not even attempt to allege a definition of "greenhouse style" that contradicts its own alleged description and photos of Trulieve's production facilities.  Instead, they rely on an alleged technical definition of the term "greenhouse" that mandates climate control systems.[1]  Opp. at 20.  But even if the Court accepts Plaintiffs' definition of "greenhouse," it does not render any statement false because

---

[1] Defendants note that the definition of "greenhouse' in Merriam Webster's Collegiate Dictionary does not say anything about climate-control systems: "a structure enclosed (as by glass) and used for the cultivation or protection of tender plants."  *See* Merrian Webster Collegiate Dictionary at https://www.merriam-webster.com/dictionary/greenhouse.

Trulieve never stated that it grew its products in greenhouses, only that its outdoor facilities were "greenhouse style" structures.  CAC ¶ 50.

Plaintiffs use the "Sustainable Agriculture Research and Education" website's definition of greenhouse to support their claim that Trulieve's alleged "hoop houses" were not "greenhouses."  *Id*.  But this website's definition of "hoop houses" destroys Plaintiffs' theory of the case—it defines hoop houses as "simple **greenhouse like structures**."  CAC ¶ 36 (emphasis added).  This completely justifies Trulieve's use of the term "greenhouse style" to describe its production facilities.

Finally, Plaintiffs argue that a reasonable investor would have interpreted the term "greenhouse style" to mean fully climate-controlled facilities because Trulieve stated that it carried out daily monitoring and logging of certain variables.  Opp. at 5.  This argument makes no sense.  Even in a fully enclosed glass greenhouse, Trulieve would not control all these variables, such as light duration and intensity.  It is absurd to say that a reasonable investor would have interpreted the fact that Trulieve tracked these variables as a representation that Trulieve had "the ability to control" every one of these factors.  Opp. at 21.

Trulieve has consistently and accurately described the nature of its production facilities, which include both indoor facilities and greenhouse style facilities.  *See, e.g.,* CAC ¶¶ 50, 53, 55, 58, 60.  Plaintiffs have not alleged any facts that would enable a reasonable juror to determine that Trulieve misled investors about its

6

facilities—indeed, Plaintiffs' own definition of Trulieve's facilities matches exactly how the Defendants described them to the market.

### B.    Mold Contamination

Plaintiffs' claim also fails because the challenged statements are immaterial as a matter of law. Plaintiffs argue that the impact of Trulieve's use of alleged "hoop houses" was material because it caused some mold contamination of Trulieve's products.[2] Opp. at 25–26. This argument is based entirely on three anecdotal allegations that collectively do not even come close to establishing a widespread and material product-quality issue.

Plaintiffs correctly note that there is no bright-line requirement of statistical significance when it comes to determining the materiality of an alleged product-quality issue. *See* Opp. at 24 (citing *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27 (2011)). However, Plaintiffs' barebones accusations fall within the zone of allegations that courts have repeatedly held are immaterial as a matter of law. *See, e.g., Oran v. Stafford*, 226 F.3d 275, 284 (3d Cir. 2000) (holding that isolated reports of product quality are immaterial).

---

[2] Plaintiffs also raise a new argument in their Opposition that the use of greenhouse style facilities without complete climate control could have impacted Trulieve's crop yields. Opp. at 23–24. Not only is this allegation absent from the CAC, it is speculative and unsupported by any factual allegation about Trulieve's crop yields.

Contrary to Plaintiffs' assertion, the case law concerning product-quality issues in the pharmaceutical industry is directly applicable to this case. Those cases analyze the issue of when isolated instances of reported product quality concerns rise to meet the materiality requirement in securities-fraud lawsuits. *See Matrixx*, 563 U.S. at 44. As the Supreme Court emphasized in *Matrixx*, while statistical significance may not be dispositive, it is certainly relevant. *Id*. Indeed, the Supreme Court relied upon the fact that it was not just "a case about a handful of anecdotal reports," but concerned medical reports from three different medical researchers spanning ten different patients. *Id*. at 45. Here, Plaintiffs have nothing more than a handful of anecdotal reports, which is immaterial as a matter of law.

## C. Related-Party Transactions

Under applicable IFRS accounting standards, a party to a transaction is a "related party" to a company preparing financial statements if they "have control or joint control of the reporting entity," have "significant influence over the reporting entity," or are a member of the "key management personnel of the reporting entity." Opp. at 27 (citing IFRS 24, ¶10). Plaintiffs have not alleged any facts showing that the two loans at issue were "related-party" transactions under these standards.

Plaintiffs allege that two loans should have been disclosed as related-party transactions. Plaintiffs allege Track V is a related entity because Hines (former Trulieve in-house counsel) is listed as its director and registered agent. Opp. at 28.

8

But Plaintiffs do not allege that Hines exercised "control or joint control" over Trulieve or was a member of Trulieve's "key management personnel." CAC ¶ 48. This pleading failure is fatal.

Plaintiffs also do not explain how Hines benefited from the loan. The purpose of enhanced related-party disclosures is to alert investors to transactions where insiders might be conflicted because of the potential for self-enrichment. *See ECA, Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 199 (2d Cir. 2009). Plaintiffs fail to allege that Hines had any financial interest in Track V.

Moreover, the Track V loan was immaterial. The fact that a lender is a related party is material only when the loan terms vary significantly from market terms— *i.e.*, the potential for offering a "sweetheart deal" to the related party at the expense of the company. *See In re China Valves Tech. Sec. Litig.*, No. 11-CIV-0796, 2012 WL 4039852, at *7 (S.D.N.Y. Sept. 12, 2012) (analyzing materiality of a related-party transaction based on the financial interest of the related party). Here, Plaintiffs do not allege that the Track V loan terms differed from market standards. Indeed, Trulieve disclosed that the Track V loan terms were more favorable than market rates. *See* Ex. 1, Trulieve Fact Sheet at 2.

The cases cited in the Opposition are inapposite. Citing *Zagami v. Nat. Health Trends Corp*, Plaintiffs argue undisclosed related-party transactions are not

automatically immaterial due to their relative size. 540 F. Supp. 2d 705 (N.D. Tex. 2008) (cited in Opp. at 29). *Zagami* held that the omission of a related-party transaction was material because insiders received an undisclosed commission that might bias their business decisions. No such commission is alleged here.

Similarly, the Second Circuit—considering the materiality of allegedly undisclosed related-party transactions—held that the omission was immaterial because the underlying transaction had been disclosed to investors and the total amount was immaterial compared to the assets of the company. *ECA*, 553 F.3d at 202. Both factors are also true in this case: the loans were disclosed and the total amount ($8 million) was immaterial compared to Trulieve's total assets ($442 million). *See* Ex. 6, 3Q19 Consolidated Interim Financial Statements at 1.

Likewise, Plaintiffs' claim concerning the Vandagraff loan also fails because the CAC does not allege that Vandagraff is tied to any individual who exercised substantial control over Trulieve or was a member of Trulieve's management team, and that the loan terms differed materially from market rates.

## II.   Plaintiffs have not raised a strong inference of scienter.

Pleading a strong inference of scienter is a high bar because it requires particularized allegations about how each individual defendant acted with either intent to defraud or with severe recklessness. *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1238 (11th Cir. 2008). Plaintiffs have not alleged any suspicious insider stock

sales or any facts based on confidential witnesses or internal documents. Instead, they rely on the alleged importance of Trulieve's production facilities and a convoluted theory of motive for Rivers. Opp. at 32–34.

Because Trulieve's production facilities were crucial to its successful operation, Plaintiffs argue that Defendants must have acted with scienter when allegedly mischaracterizing the nature of those facilities. Opp. at 31. This theory completely misunderstands the particularized pleading requirements of the PSLRA. The question is not whether Defendants knew what types of facilities Trulieve owned, but whether they acted with "intent to deceive, manipulate, or defraud" investors by deliberately mischaracterizing those facilities. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976). Plaintiffs have not alleged a single fact suggesting that either Individual Defendant knew or should have known that it was misleading to describe its facilities as "greenhouse style" operations. Moreover, Defendants' description of Trulieve's facilities was perfectly reasonable based on Plaintiffs' own definition. CAC ¶ 36;

But the alleged mischaracterization of Trulieve's facilities does not, by itself, raise a strong inference of scienter because individuals may make inaccurate statements for a host of innocuous reasons, including misunderstanding, confusion, or the use of imprecise language. Plaintiffs do not plead any specific facts showing that either Individual Defendant intentionally mischaracterized Trulieve's

production facilities. Instead, they rely on admittedly circumstantial evidence of motive for only one of the two defendants, Rivers. *See* Opp. at 31. And that theory makes no sense.

Plaintiffs allege that Rivers lied about the nature of Trulieve's production facilities to justify overpaying her husband's business. Opp. at 32–34. But Plaintiffs do not address the fact that Trulieve disclosed this related-party transaction and the purchase price. CAC ¶ 56; Ex. 5, 2018 Consolidated Financial Statements at 29. These disclosures are the opposite of a "cover-up," and negate any possible motive.

Plaintiffs argue that the allegation itself—that Trulieve overpaid for the land purchased from One More Wish—supports their motive theory. Opp. at 3. Plaintiffs argue that the property-tax-appraisal records do not reflect construction of any buildings during the time that One More Wish owned the land. *Id.* at 34. Defendants do not contend that these records are incorrect, but rather that they are irrelevant. *Cf.* Opp. at 34; MTD at 21. The purpose of such appraisals is for the accurate taxation of real property, not for the cataloguing of every improvement made to a parcel of land. For example, these records do not identify or appraise tangible personal property, which are appraised and taxed separately from real property. *See* Florida Statute, Section 195.073. The Florida Department of Revenue confirms this by clarifying that "machinery, equipment or structure… used

12

in a manufacturing process… is to be considered personal property." Tangible Personal Property Appraisal Guidelines, at 50, *available at* https://floridarevenue. com/property/Documents/TPPGuidelines.pdf.    Importantly, the Florida  Department of Revenue defines greenhouses and other related agricultural structures as personal property. *Id*.  Thus, the property tax records say nothing at all about whether Trulieve overpaid One More Wish for the property.

### III.    Plaintiffs' claims fail the *Morrison* test.

The CAC is devoid of facts showing that Plaintiffs engaged in "transactions in securities listed on domestic exchanges" or in "domestic transactions in other securities." *See Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 267 (2010).

Plaintiffs bring this putative class action on behalf of investors who purchased Trulieve stock on the over-the-counter market known as OTCQX. *See* MTD at 9–10; *cf.* CAC ¶ 76.  The SEC specifically exempts OTC Link from the Exchange Act's definition of an "exchange."  MTD at 10 n.4.  The Eleventh Circuit's decision in *United States v. Isaacson*, 752 F.3d 1291 (11th Cir. 2014), does not change this conclusion because it did not hold that over-the-counter markets like OTC Link are "exchanges" under the Exchange Act.  *See Stoyas v. Toshiba Corp.*, 896 F.3d 933, 947 (9th Cir. 2018) (rebutting plaintiffs' argument and stating that "nothing in *Isaacson* convinces us that OTC Link is an 'exchange' under the Exchange Act"); *see also* Opp. at 18.

Plaintiffs also fail to plead that they engaged in any "domestic transactions" of Trulieve securities because the CAC is devoid of facts showing that Plaintiffs' "purchase or sale" of Trulieve securities took place in the United States. *See* MTD at 10–12; s*ee also Quail Cruises Ship Mgmt. Ltd. v. Agencia de Viagens CVC Tur Limitada*, 645 F.3d 1307, 1310 (11th Cir. 2011). In other words, Plaintiffs fail to meet *Morrison*'s second prong because Plaintiffs' allegations are insufficient to show that title to Trulieve securities were transferred to them within the United States. *Quail Cruises*, 645 F.3d at 1310–11 ("[W]e cannot say at this stage in the proceedings that the alleged transfer of title to the shares in the United States lies beyond § 10(b)'s territorial reach.").

Plaintiffs' reliance on *Isaacson* is misplaced. The issue in *Isaacson* was whether a criminal statute, 18 U.S.C. § 371, reached defendant's conduct. *Isaacson*, 752 F.3d at 1299. That is not the case here. Likewise, Plaintiffs may not shore up or amend their deficient CAC through their briefing. *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (holding that plaintiff could not amend her complaint through a legal memorandum filed in opposition to a motion to dismiss); *compare* Opp. at 17–18 *with Stoyas*, 896 F.3d at *950–51.

## CONCLUSION

For all the foregoing reasons, the Court should dismiss the CAC.

14

Dated:  November 25, 2020                              Respectfully Submitted

**KING & SPALDING LLP**                                **STEARNS WEAVER MILLER**
                                                       **WEISSLER ALHADEFF &**
*/s/ Paul R. Bessette*                                 **SITTERSON, P.A.**
Paul R. Bessette *(admitted pro hac vice)*
  Texas Bar No. 02263050                               */s/  Glenn Burhans, Jr.*
Michael J. Biles *(admitted pro hac vice)*             Glenn Burhans, Jr.
  Texas Bar No. 24008578                                 Florida Bar No. 60587
Tyler W. Highful *(admitted pro hac vice)*             Highpoint Center
  Texas Bar No. 24083176                               106 East College Avenue, Suite 700
Srimath S. Subasinghe *(admitted pro hac*             Tallahassee, FL  32301
*vice)*                                                Tel: 850.329.4850
  Texas Bar No. 24093226                               gburhans@stearnsweaver.com
Jessica England *(admitted pro hac vice)*
  Texas Bar No. 24105841                               Grace L. Mead
500 W. 2nd Street, Suite 1800                            Florida Bar No. 49896
Austin, Texas 78701                                    Museum Tower
Tel:  512.457.2000                                     150 West Flagler Street, Suite 2200
pbessette@kslaw.com                                    Miami, FL  33130
mbiles@kslaw.com                                       Tel:  305.789.3200
thighful@kslaw.com                                     gmead@stearnsweaver.com
ssubasinghe@kslaw.com
jengland@kslaw.com

*Counsel for Defendants Trulieve Cannabis Corp.,*
*Kim Rivers, and Mohan Srinivasan*

15

## <u>LOCAL RULE 7.1(F) CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel certifies that the text of Defendants' Reply Brief in Support of Motion to Dismiss the Consolidated Amended Class Action Complaint comprises 3,174 words, excluding parts excluded under LR 7.1(F), according to the word count provided by Microsoft Word (Office 365) word processing software.

*/s/ Paul R. Bessette*
Paul R. Bessette

## <u>CERTIFICATE OF SERVICE</u>

I certify that on November 25, 2020, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this documents via the Court's CM/ECF Filing System.

/s/ *Paul R. Bessette*
Paul R. Bessette

16