# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

MONICA ACERRA, et al.,

        Plaintiffs,

v.

TRULIEVE CANNABIS CORP., et al.,

        Defendants.

CONSOLIDATED
CASE NO. 4:20cv186-RH-MJF

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF
## MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

**KING & SPALDING LLP**

Paul R. Bessette *(pro hac vice)*
Texas Bar No. 02263050
Michael J. Biles *(pro hac vice)*
Texas Bar No. 24008578
S. Saliya Subasinghe *(pro hac vice)*
Texas Bar No. 24093226
500 W. 2nd Street, Suite 1800
Austin, Texas 78701
pbessette@kslaw.com
mbiles@kslaw.com
ssubasinghe@kslaw.com

**STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.**

Glenn Burhans, Jr.
Florida Bar No. 60587
Highpoint Center
106 East College Ave., Suite 700
Tallahassee, FL  32301
Tel: 850.329.4850
gburhans@stearnsweaver.com

Grace L. Mead
Florida Bar No. 49896
Museum Tower
150 West Flagler St., Suite 2200
Miami, FL  33130
Tel:  305.789.3200
gmead@stearnsweaver.com

*Counsel for Defendants Trulieve Cannabis Corp.,
Kim Rivers, and Mohan Srinivasan*

## TABLE OF CONTENTS

INTRODUCTION ......................................................................................................1

ARGUMENT............................................................................................................2

I.    The SAC fails to allege any false or misleading statement...............2

    A.    The challenged statements in Trulieve's regulatory filings are true. ...............................................................3

    B.    The challenged statement in the 850-Business-Magazine Article is true. ...............................................6

    C.    The challenged statement on Trulieve's website is true. ........6

II.    The challenged statements about the quality of the cannabis-growing facilities are immaterial. .......................................................8

III.    The SAC fails to raise a strong inference of scienter........................11

    A.    The executives' titles and the importance of Trulieve's cultivation facilities are insufficient to establish scienter. .......................................................................11

    B.    The challenged statement on Trulieve's website does not raise an inference of scienter. .............................................14

CONCLUSION........................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Basic v. Levinson,*
    484 U.S. 224 (1988) ........................................................................... 9

*Brophy v. Jiangbo Pharms., Inc.,*
    781 F.3d 1296 (11th Cir. 2015) .................................................. 12, 13

*Bryant v. Avado Brands, Inc.,*
    187 F.3d 1271 (11th Cir. 1999) ......................................................... 3

*Carvelli v. Ocwen Fin. Corp.,*
    934 F.3d 1307 (11th Cir. 2019) ...................................................... 4, 5

*Durgin v. Mon,*
    415 F. App'x 161 (11th Cir. 2011) ................................................... 12

*Henningsen v. ADT Corp.,*
    161 F. Supp. 3d 1161 (S.D. Fla. 2015) .............................................. 6

*Janus Cap. Grp., Inc. v. First Deriv. Traders,*
    564 U.S. 135 (2011) .................................................................... 15, 16

*In re KLX, Inc. Sec. Litig.,*
    232 F. Supp. 3d 1269 (S.D. Fla. 2017) ............................................ 10

*Mizzaro v. Home Depot, Inc.,*
    544 F.3d 1230 (11th Cir. 2008) ....................................................... 11

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund,*
    575 U.S. 175 (2015) ........................................................................... 3

*Weakley v. Eagle Logistics,*
    2017 WL 2929375 (N.D. Ala. Mar. 2, 2017) ...................................... 15

**Statutes**

15 U.S.C. § 78u-4(b) (Reform Act) ......................................................... 12

## INTRODUCTION

Plaintiffs' Opposition (Dkt. No. 44) does not and cannot provide a basis for the Court to change its March 18, 2021 Order dismissing Plaintiffs' securities fraud claims.  The Opposition fails to overcome the fundamental flaws to their core allegation that Trulieve somehow deceived investors when it disclosed that it grew cannabis in climate-controlled facilities while it also grew cannabis in outdoor "hoop-houses."  First, the challenged statements are true—Trulieve did grow cannabis plants in both indoor, climate-controlled facilities and in outdoor facilities.  It did not need to constantly remind investors about its outdoor facilities every time it discussed its indoor, climate-controlled facilities.  Second, the statements are not material because Plaintiffs have failed to allege facts showing that Trulieve's outdoor operations resulted in any systemic or wide-spread mold contamination—one or two pictures pulled from the internet is insufficient to establish that Trulieve had a material product-quality issue from its outdoor production.

Finally, the Opposition does not credibly explain how the new allegations in the Second Amended Complaint ("SAC") (Dkt. No. 38) raise a strong inference of each defendant's scienter.  The SAC contains no new

1

facts at all concerning Srinivasan, Trulieve's former CFO.  And the new allegations concerning Rivers, Trulieve's CEO—that she touted Trulieve's indoor facilities to the press—does not suggest that she knew her statements were false or misleading because Trulieve also had outdoor operations.  Plaintiffs do not cite to even one document or witness suggesting that Trulieve's outdoor "hoop houses" caused widespread mold problems, nor that Rivers or Srinivasan knew about such problems, nor that anyone could or should have anticipated that any such mold would have any impact on Trulieve's financial results.

For these and other reasons more fully set forth below, the Court should dismiss the SAC with prejudice.

## ARGUMENT

## I.   The SAC fails to allege any false or misleading statement.

Plaintiffs challenge three additional statements in the SAC about the quality of Trulieve's cannabis-growing facilities.  None of these challenged statements is false or misleading for the reasons stated below and in the Motion to Dismiss the SAC ("Brief") (Dkt. No. 41).  Br. at 13–22.

## A.   The challenged statements in Trulieve's regulatory filings are true.

Plaintiffs' challenge to Trulieve's statement that it operated "greenhouse style grows" fails for the reasons stated in the Motion to Dismiss the CAC ("MTD-CAC") (Dkt. No. 30) and the Order (Dkt. No. 37) dismissing it. MTD-CAC at 14–17; Order at 11; Br. at 13–16.  Likewise, Plaintiffs' challenge to Trulieve's statement that it worked to "increase its greenhouse capacity" fails because the SAC lacks any factual allegations suggesting that Trulieve was not working to "increase its greenhouse capacity."   Moreover, Plaintiffs do not and cannot explain why a reasonable investor would believe a structure must be climate-controlled to qualify as a greenhouse.  Br. 14–16.

The Supreme Court has held that evaluating whether a statement is "misleading always depends on context," including the formality of the disclosure and "all its surrounding text."  *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 190 (2015).  Plaintiffs cannot "pull snippets from the documents out of context to survive a motion to dismiss, notwithstanding the fact that dismissal would have been appropriate if the statements had been read in context."  *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1279 (11th Cir. 1999).

Read in the context of Trulieve's regulatory filings, working to increase "greenhouse" capacity refers to increasing capacity of its "greenhouse style" facilities:

> The Corporation currently operates over 638,000 square feet of cultivation facilities across four sites. In accordance with Florida law, Trulieve grows in enclosed structures *operating both* **indoor** *and* **greenhouse style grows**. Trulieve currently has the ability to grow 29,235 kg of cannabis annually. Trulieve is working to rapidly and substantially *increase its* **greenhouse capacity**.[1]

No reasonable investor would read the above sentence about Trulieve working to increase its "greenhouse capacity"—as Trulieve working to increase only its "indoor" capacity. Such an interpretation is not plausible in the context of the sentences that precede the challenged statement and Trulieve's other public disclosures that it grows cannabis in *both* indoor facilities and outdoor greenhouse-style facilities. Br. 10–12; SAC ¶¶ 38, 63; *cf.* Order at 11.[2]

---

[1] *See* SAC ¶ 63 (emphasis added); *see also id.* ¶¶ 53, 60, 66; *cf.* Order at 11 (noting that "Trulieve's filings said it used 'greenhouse style' facilities—plainly not an attempt to meet any specific or formal definition of a greenhouse").

[2] *See also Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1321 (11th Cir. 2019) ("The [plaintiff] nonetheless insists that these statements become materially misleading when considered in context—because nothing had changed with REALServicing, it argues, promises about improvements and progress were false, and significantly so. We disagree [because] the

Plaintiffs argue that this challenged statement is misleading because "a reasonable investor would have read [it] in conjunction with Trulieve's unqualified prior assertions[3] that its facilities were climate controlled." Opp. at 24 (citing *Carvelli*, 934 F.3d at 1320). However, the Eleventh Circuit requires that challenged statements be read in their entire context, not Plaintiffs' cherry-picked context. *See Carvelli*, 934 F.3d at 1322 (stating that the context of the challenged statements "actually cuts the [plaintiff's] argument out from under it. For example, the … complaint highlights [the defendant's] announcement that '[a]s a company we continue to make progress in resolving our legacy issues.' But the complaint elides the remainder of the sentence, including the recognition that 'there is more work to be done"). The website statement also does not render the challenged statements in Trulieve's regulatory filings misleading because it did *not* state or imply that Trulieve

---

market was well aware of [defendant's] regulatory problems … and indeed were addressed openly in [the defendant's] filings, investor calls, and press releases.").

[3] Opp. at 24 (referring to the challenged statement on Trulieve's website and a purported April 18, 2018 statement made prior to the purported class period); *see also infra* §§I.B–C.

cultivated *all* of its cannabis in a "climate-controlled environment." *See infra* § I.C; Br. at 18–20.

## B. The challenged statement in the 850-Business-Magazine Article is true.

For the reasons stated in the Brief, Plaintiffs' challenge to the statement in a magazine article about wanting to "control the environmental factors" to "get the highest quality product" also fails. Br. at 16–18. Plaintiffs argue that this statement did not indicate that Rivers "was referring to the indoor facility only." Opp. at 23. But, again, the entire context of the article makes clear that Rivers was referring to Trulieve's indoor facilities. Br. at 16–18; SAC ¶ 57 (alleging that this article was "describing a tour of Trulieve's indoor growing facility and an interview with Rivers").

Moreover, statements about "high quality" products like the challenged statement (SAC ¶ 57) are non-actionable puffery. *Henningsen v. ADT Corp.*, 161 F. Supp. 3d 1161, 1191 (S.D. Fla. 2015); Order at 12.

## C. The challenged statement on Trulieve's website is true.

Plaintiffs' challenge to the website statement about cultivating cannabis in a "controlled environment" fails. Both Trulieve's disclosures

6

and Plaintiffs' own allegations show that Trulieve operated indoor climate-controlled facilities.  Br. 18–19.  Plaintiffs argue that a "reasonable investor would have interpreted the statement that Trulieve grew their products in a climate-controlled environment as a claim that they grew all of their products in a climate-controlled environment." Opp. at 19.  But, as explained in the Brief, this interpretation is not plausible when the statement is read in the context of Trulieve's public filings.  Br. at 19–20.

Plaintiffs argue that because "Defendants do not dispute the fact that greenhouses often, or even typically, are climate controlled," Trulieve's "use of 'greenhouse style' … did not put investors on notice that Trulieve's 'greenhouse style' facilities were not climate controlled."  Opp. at 20.  This ignores all of Trulieve's public disclosures and their context. Moreover, and not surprisingly, the SAC lacks any factual allegations to support the argument.  To the contrary, Plaintiffs' assertion—that "greenhouses" are typically climate controlled—is implausible when viewed in the context of the common understanding of this term.[4]  *Cf.*

---

[4] *See, e.g.,* https://www.google.com/search?q=greenhouse&rlz=1C1GCE A_enUS887US887&source=lnms&tbm=isch&sa=X&ved=2ahUKEwiv6r r3hrHxAhWakWoFHaJXBNQQ_AUoA3oECAIQBQ&biw=1315&bih=12

*Ashcroft v. Iqbal*, 556 U.S. 662, 663–64 (2009) (noting that a court must "draw on its experience and common sense" when evaluating plausibility). In any event, "Trulieve's filings said it used 'greenhouse style' facilities—plainly not an attempt to meet any specific or formal definition of a greenhouse." Order at 11.

## II. The challenged statements about the quality of the cannabis-growing facilities are immaterial.

Plaintiffs' materiality theory is that Trulieve's statements about growing cannabis in indoor "climate-controlled" facilities—when it also disclosed that it grew cannabis in outdoor greenhouse-style facilities—was *important* to investors because outdoor growth could result in mold contamination, which in turn could impact Trulieve's bottom line. *See, e.g.*, Opp. at 23 (arguing that the challenged statements were materially misleading because Trulieve "failed to disclose that a majority of Trulieve's facilities were not climate controlled"); SAC ¶¶ 2, 30, 32, 47. But, as with falsity, materiality must be judged in the context of Trulieve's repeated disclosures that it also grew cannabis in outdoor, greenhouse-style facilities. *See supra* at 3–6. Indeed, it is bedrock law

---

74&dpr=1.5 (showing images responsive to the search-term "greenhouse").

that "to fulfill the materiality requirement there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the *total mix* of information made available." *Basic v. Levinson*, 484 U.S. 224, 231–32 (1988) (emphasis added). Plaintiffs thus have not even come close to alleging any material misrepresentations or omissions.

Plaintiffs nonetheless quarrel with Trulieve's use of the term "hoop houses," arguing that these outdoor structures are ill-suited for growing cannabis in Florida's humid climate because they cause mold-contaminated products. SAC ¶ 49. But the SAC does not allege any facts showing that growing cannabis in outdoor facilities *actually did* cause any systemic or widespread mold contamination or that mold contamination had any financial impact on Trulieve. Br. at 20–22.[5]

Plaintiffs argue that investors "could only have interpreted" the challenged statements "as stressing the importance of climate control for the production of marijuana for oil-based products" because these "were

---

[5] The challenged statements about "climate control" are material *only* to the extent that the lack of "climate control" in Trulieve's cultivation facilities leads to mold contamination. The SAC does not allege any other reason why this distinction—between climate-controlled and non-climate-controlled facilities—is material.

9

the only products" that Trulieve could sell at the time. Opp. at 22; *cf.* Ex. 7, 4Q18 MD&A at 25 (disclosing that the cultivation of oil products does not have the same concern because the plant matter is highly processed and filtered into the oil extractions that are eventually sold).[6]  But the *only* alleged consequence of using outdoor facilities—as opposed to indoor climate-controlled facilities—was two anecdotal posts about mold contamination of "Trulieve flower," SAC ¶¶ 49–51, which cannot support Plaintiffs' theory of materiality. *Cf.* Order at 2, 12.

Plaintiffs also argue that Defendants cannot point to a single statement "during the class period where they stated that climate-controlled growing is only important for smokable flower." Opp. at 22. But the SAC does not allege that Trulieve sold even a single mold contaminated "oil-based product," let alone that any systemic or widespread mold-contamination existed.  In short, the alleged failure to

---

[6] Plaintiffs also argue that Defendants' reliance on the "Fact Sheet" in the MTD is improper.  Opp. at 21.  They are mistaken. Defendants referenced the "Fact Sheet" because SAC ¶ 43 incorporated it by reference and did not dispute its contents. *In re KLX, Inc. Sec. Litig.*, 232 F. Supp. 3d 1269, 1275 (S.D. Fla. 2017).  Even disregarding the Fact Sheet, Plaintiffs fail to plead materiality.

warn about a non-existent mold problem with oil-based products is *immaterial* and fails to state a claim.

## III.  The SAC fails to raise a strong inference of scienter.

The Court should dismiss the SAC with prejudice for the independent reason that it fails to allege even one *new* fact showing that either individual defendant acted with an intent to defraud or with severe recklessness.  *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1238 (11th Cir. 2008).  The SAC does not allege any suspicious insider stock sales or any facts based on confidential witnesses or internal documents showing that Rivers or Srinivasan knew or had reason to believe their statements were false or misleading when made. Order at 15 (citing *Mizzaro*, 544 F.3d 1230 at 1247); Br. at 23–25.

### A.  The executives' titles and the importance of Trulieve's cultivation facilities are insufficient to establish scienter.

Plaintiffs continue to rely on Rivers' and Srinivasan's titles and the importance of Trulieve's cultivation facilities to its operations,[7] Opp.

---

[7] The SAC does not contain any new scienter allegations against Srinivasan (Br. at 24–25) and the Opposition does not even mention him. The Court can and should dismiss with prejudice the claims against Srinivasan on this basis alone.  *See* Order at 15.

at 26, neither of which contributes to an inference of scienter. *See Durgin v. Mon,* 415 F. App'x 161, 165 (11th Cir. 2011). Nor do they directly respond to or refute Defendants' scienter arguments in the motion to dismiss. *Compare* Br. at 23–25 *with* Opp. at 24–27.

Plaintiffs argue that scienter can be inferred from Rivers' statements because she "repeatedly spoke knowledgeably about Trulieve's use of, and the importance of, climate-controlled facilities." Opp. at 26–27; *cf.* SAC ¶¶ 74–76. In other words, Plaintiffs argue that Rivers must have acted with scienter when allegedly mischaracterizing the nature of Trulieve's cultivation facilities because these facilities were important to Trulieve's successful operation. Plaintiffs misunderstand the Reform Act's particularized pleading requirements. Opp. at 27 (arguing that Rivers' challenged statement in the 850-Business-Magazine article "provides a strong inference that she was aware that Trulieve used non climate-controlled facilities"). The question is not whether Rivers knew what types of facilities Trulieve owned or operated, but whether she acted with an "intent to deceive, manipulate, or defraud" investors by deliberately mischaracterizing those facilities. *See Brophy v. Jiangbo Pharms., Inc.,* 781 F.3d 1296, 1302 (11th Cir. 2015). The SAC

12

is devoid of a single fact suggesting that Rivers knew or should have known that her characterization of Trulieve's facilities was inaccurate. This is because, as shown above, her description was true.

Moreover, the alleged mischaracterization of Trulieve's cultivation facilities does not, by itself, raise a strong inference of scienter because individuals can make inaccurate statements for a host of innocuous reasons, including misunderstanding, confusion, or the use of imprecise language (especially during an interview). *See Brophy*, 781 F.3d at 1302 (stating that a court must also consider "plausible, nonculpable explanations for the defendant's conduct in evaluating an inference of scienter"). The SAC does not allege any particularized facts showing that Rivers intentionally mischaracterized Trulieve's facilities. Instead, the SAC, like the CAC, relies on admitted circumstantial evidence of motive that makes no sense. *Compare* SAC ¶¶ 2, 43, 44, 73 with CAC ¶¶ 2, 33, 34, 71; *cf.* Order at 15 (noting that motive-and-opportunity allegations alone are not sufficient to allege scienter). Plaintiffs claim that Rivers lied about the nature of Trulieve's facilities to justify overpaying for a transaction with her husband's business. SAC ¶ 73; *cf.* Order at 15. But Plaintiffs do not address the fact that Trulieve disclosed this related-

13

party transaction and the purchase price.  *See* Ex. 5, 2018 Consolidated

Financial Statements at 29.  This disclosure is the opposite of a cover-up

and negates any possible motive.  Tellingly, Plaintiffs have dropped the

related-party claims in the SAC.

> **B.    The challenged statement on Trulieve's website does
> not raise an inference of scienter.**

Plaintiffs do not refute Defendants' argument that the challenged

statement on Trulieve's website[8] does not raise an inference of scienter

with respect to Rivers.  Br. at 25.  Instead, Plaintiffs allege, for the first

time in their opposition, that scienter can also be inferred because Rivers

allegedly "made a statement before the class period that mirrors the

deceptive statement on Trulieve's website."[9]  Plaintiffs' argument fails

for three reasons.

---

8 SAC ¶ 39 ("Trulieve products are hand-grown and specially cultivated
in a state-approved, climate-controlled environment to ensure purity and
safety. We leave nothing to chance while letting nature do her work.").

9 Opp. at 26–27 ("Trulieve put out a statement summarizing an interview
with Rivers and *attributing* to her the statement that "Trulieve, the first
fully-licensed cannabis business in Florida, grows the plant in a climate-
controlled environment in compartments that enable them to control
plant health and growth one-on-one as opposed to growing marijuana in
a massive space.") (emphasis added) (citing SAC ¶ 40).  But Plaintiffs do
not attach a copy of this purported press release to the SAC.  Trulieve did
not issue a press release on April 18, 2018.  Defendants found only one
public document containing the statement quoted in SAC ¶ 40.  Ex. 12,

*First*, the SAC does *not* allege that Rivers "made" this statement or that this statement was *attributed* to her.[10]  *Weakley v. Eagle Logistics*, No. 3:16-CV-00205-HGD, 2017 WL 2929375, at *2 (N.D. Ala. Mar. 2, 2017) ("The law is clear that a party may not insert new claims and allegations by way of a brief in opposition to a motion to dismiss."). Regardless, Plaintiffs' conclusory assertion—that Rivers "made" the statement quoted in SAC ¶ 40—fails because the SAC is devoid of any facts showing that Rivers had "ultimate authority" over the Newswire Article and its content.  *See Janus Cap. Grp., Inc. v. First Deriv. Traders*, 564 U.S. 135, 144 (2011).

*Second*, Plaintiffs' argument that Rivers made the challenged statement in the purported press release is belied by the document itself. John Matthews, the Newswire Article's author, used quotation marks to attribute statements to Rivers.  The sentence quoted in SAC ¶ 40 is *not* enclosed by quotation marks and is *not* otherwise attributed to Rivers,

---

John Matthews, *Kim Rivers on the Benefits of Marijuana Dispensaries*, NEWSWIRE, (Apr. 11, 2018) ("Newswire Article") (attached as an exhibit to the Bessette Affidavit filed with this reply brief); *see also* Br. at 8 n.3.
[10] SAC ¶ 40 (alleging *only* that "Trulieve issued a press release summarizing an interview with Kim Rivers" and that the press release "stated in part" the quoted sentence; *not* that Rivers "made" the quoted statement).

15

which undermines the inference that Rivers "was involved in crafting" or "approving" the challenged statement on Trulieve's website because she "made" the statement quoted in SAC ¶ 40.  Opp. at 27.

*Third*, this sentence does not "mirror" the challenged sentence on Trulieve's website, Opp. at 26, because the two sentences only have one three-word phrase (*i.e.*, "climate-controlled environment") in common.[11] A more plausible inference is that John Matthews—the author of the Newswire Article—simply copied this phrase from Trulieve's website.

## CONCLUSION

For all the foregoing reasons, the Court should dismiss the SAC with prejudice.

---

[11] C*ompare* SAC ¶ 39 *with* ¶ 40.  In any event, the statement that Trulieve grows cannabis in a "climate-controlled environment" is true. *See supra* §I.

16

Dated:  June 30, 2021

**KING & SPALDING LLP**

*/s/ Paul R. Bessette*
Paul R. Bessette *(pro hac vice)*
Texas Bar No. 02263050
Michael J. Biles *(pro hac vice)*
Texas Bar No. 24008578
S. Saliya Subasinghe *(pro hac vice)*
Texas Bar No. 24093226

500 W. 2nd Street, Suite 1800
Austin, Texas 78701
Tel:  512.457.2000
pbessette@kslaw.com
mbiles@kslaw.com
ssubasinghe@kslaw.com

Respectfully submitted,

**STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.**

/s/ *Glenn Burhans, Jr.*
Glenn Burhans, Jr.
Florida Bar No. 60587
Highpoint Center
106 E. College Avenue, Ste. 700
Tallahassee, FL  32301
Tel: 850.329.4850
gburhans@stearnsweaver.com

Grace L. Mead
Florida Bar No. 49896
Museum Tower
150 West Flagler St, Ste 2200
Miami, FL  33130
Tel:  305.789.3200
gmead@stearnsweaver.com

*Counsel for Defendants Trulieve Cannabis Corp.,*
*Kim Rivers, and Mohan Srinivasan*

17

## LOCAL RULE 7.1(F) CERTIFICATE OF COMPLIANCE

The undersigned counsel certifies that the text of Defendants' Reply Brief in Support of Motion to Dismiss the Second Amended Class Action Complaint comprises 3,172 words, excluding parts excluded under LR 7.1(F), according to the word count provided by Microsoft Word (Office 365) word processing software.

*/s/ Paul R. Bessette*
Paul R. Bessette


## CERTIFICATE OF SERVICE

I certify that on June 30, 2021, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this documents via the Court's CM/ECF Filing System.

/s/ *Paul R. Bessette*
Paul R. Bessette

18